# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF WORCESTER, SEPTEMBER TERM 1835, AT WORCESTER.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice,
Hon. SAMUEL PUTNAM,
Hon. SAMUEL S. WILDE,  } Justices
Hon. MARCUS MORTON,

---

## Warren Hunt *versus* Otis W. Hunt *et al.*

When a suit upon a mortgage to recover possession for condition broken, is rightfully brought against the tenant in possession, especially if he be the mortgager, it may rightfully proceed to judgment, and it cannot be defeated by the act of the mortgager, by alienating the mortgaged premises, either in whole or in part, and all persons coming in under the mortgager after suit thus commenced, will be bound oy the judgment, and by the possession taken under it.

The mortgager of a farm situate on the south side of a river and extending to the thread, conveyed to a third person a mill on the north side, together with a dam across the river, and the grantee entered into possession, using the dam to run the mill and occasionally making repairs on the south end of the dam. In serving an *habere facias* issued in an action on the mortgage, the officer entered on the farm in order to give possession of the mortgaged premises, but did not enter on the part of the dam embraced by the mortgage. It was *held*, that if it be necessary for an officer, when he finds distinct parcels of land described in his writ, in the open and visible possession of persons not parties to the writ, to enter upon the several parcels, yet that it was not necessary for the officer to enter upon the south end of the dam, since the possession of the grantee, if he had any, was incident to a tenement on the north side of the river, and was only a legal and constructive possession, following his title, which was subject to the mortgage, and must be considered to be determined by the legal possession given to the mortgagee under his judg-ment

BILL in equity to redeem a small parcel of land, being the southerly half of a mill-dam, across Mumford river, in the town of Douglas, and extending to the thread of the river.

Otis W. and Oliver Hunt were the defendants in the original bill, and Royal and Asa Thayer were made defendarts by a supplemental bill.

In 1803, Samuel Legg was the owner of a farm, bounded northerly by the middle of the river, and the parcel of land in controversy was a part of this farm. On April 4, 1803, Legg, by his deed duly recorded, mortgaged the farm to Nathan Verry, to secure the payment of 600 dollars. Legg remained in possession at least until 1810, and erected the dam in question. In January 1810, he conveyed, by deed, recorded in the same month, to Benjamin Adams, a fulling-mill on the north side of the river, standing on land of Benjamin Craggin, together with the dam erected across the river and the floom, to the south bank of the river, with the privileges and appurtenances. One apartment in the fulling-mill contained machinery for carding wool, and was occupied by Craggin. The other part, containing the fulling works, was, by an agreement with Adams, to remain for one year in the occupation of Legg, and was occupied by him accordingly. The estate thus transferred to Adams, came by various mesne conveyances to the plaintiff. In March, 1810, Legg quitclaimed the farm as far as the thread of the river, to Asa Thayer. In May 1810 Verry commenced a suit against Legg upon the mortgage, to recover possession of the mortgaged premises, and in September 1811 obtained judgment. On February 7, 1812, possession was delivered to Verry, by virtue of an *habere facias*, the officer probably entering upon the farm and giving possession in the name of the whole mortgaged premises, but not entering on the dam. The evidence was contradictory on the question whether Legg was in possession at that time. On May 21, 1812, Verry conveyed the same premises to Asa Thayer, by a quitclaim deed. Asa Thayer afterwards conveyed the farm to Amory Thayer, reserving one acre, which included the land in controversy. Upon the death of Asa Thayer in April, 1828, his title to this acre of land came to Royal and Asa Thayer, two of the defendants,

who, in September 1829, conveyed the same to the other two defendants. Repairs were made from time to time from 1810 to 1822, on the south part of the dam, by the occupants on the north side of the river. There were no works on the south s'de.

The plaintiff contended that the mortgage to Verry was still in force as a mortgage, and he claimed a right to redeem the parcel of land in controversy, by contributing a ratable proportion of the original debt and interest secured by the mortgage.

The defendants alleged that the right of redemption had been foreclosed.

The case was argued in writing.

*J. Davis* and *Washburn*, for the plaintiff, contended, that from 1810 to the present time, there had been an actual, and not merely a constructive occupation of the disputed premises, by the successive owners of the works on the north side of the river ; that where the mortgager has conveyed a part of the mortgaged premises to a stranger, there must be an actual entry upon the parcel thus conveyed, in order to foreclose it ; *Taylor* v. *Porter*, 7 Mass R. 357 ; Stearns on Real Actions, 267 ; ibid. 42, cites *Green* v. *Liter*, 8 Cranch, 250 ; that whatever might have been the effect of Verry's judgment upon Legg and those claiming under him by subsequently acquired titles, it could not affect third persons not privy to it as a judgment ; *Chase* v. *Hathaway*, 14 Mass. R. 222 ; 1 Stark. Evid. 191, 192, 193 ; and that Legg was not in possession o. the disputed premises, at the time of the service of the *habere facias*.

*Newton* and *W. Lincoln*, for the defendant.

*Sept.* 30th. SHAW C. J. delivered the opinion of the Court. This case involves many of the same facts and principles which came before the Court in 1833, in a writ between the same parties, upon the question of legal title. 14 Pick. 374. It having been decided in that case that the legal title was with the defendants, the plaintiff now proceeds upon his bill in equity to redeem, on the ground that he took a portion of the premises mortgaged in 1803 by Legg to Verry, that that mortgage has never been foreclosed, as to the small parcel of

the premises now in controversy, that the defendants have become the proprietors of the other part of the mortgaged premises, and that the plaintiff has now an equitable right to redeem, upon payment of such a proportion of the amount due on the mortgage, as the value of the disputed premises bears to the whole value of the mortgaged premises. The evidence and the arguments in the present case have been full and elaborate, and embrace many points which we have not deemed material.

The main question is, whether the judgment in the case of *Verry* v. *Legg*, the writ of *habere facias* issued on that judgment, the execution of the writ, by delivery of possession to the mortgagee, and the lapse of three years without redemption, amounted to a foreclosure under the statutes ; and the Court are of opinion that they did.

The rights of all parties to a mortgage are regulated by statute. In order to foreclose, the mortgagee or person claiming under him, must, *by process of law, or* by open and peaceable entry made in the presence of two witnesses, have taken actual possession, and continued that possession peaceably three years.

The purpose of the process of law, sued by a mortgagee, is to obtain actual possession. Under this statute it has been held, that a suit for possession, to effect a foreclosure, is rightfully brought against the tenant in possession, and that the mortgagee is not obliged to ascertain who is tenant of the freehold. *Keith* v. *Swan*, 11 Mass. R. 216. If this is true generally, *a fortiori* will it be so when the mortgager himself has remained in possession, and there has been no open and visible change in the actual occupation, from the time of the execution of the mortgage deed to the commencement of a suit for foreclosure. We think it follows as a necessary consequence from this principle, that when a writ is rightly brought against the tenant in possession, especially against the mortgager, it may rightfully proceed to judgment, and that the suit cannot be defeated by the act of the mortgager, by alienating the mortgaged premises, either in whole or in part, and that all persons coming in under the mortgager after suit thus commenced, will be bound by the judgment. Were it

otherwise, it is obvious that such suit might always be de
feated by such alienations ; and should the plaintiff discon-
tinue and begin again, by suit against the purchasers, the
same course may be again taken by new conveyances.  Nor
is this rule, making such judgment binding upon all those
who come in under the mortgager, after suit brought, likely to
operate as a hardship, or to work practical injustice.  The
judgment is binding upon no one, except those who come in
after the mortgage and take their titles subject to such mort-
gage.  But every one who takes the title of a mortgager,
where the mortgage is duly registered, takes with construc-
tive notice of the existence and terms of the incumbrance.
He has notice what the condition is, and when it will be
broken, if not performed.  When the time has elapsed, he
will know from the registry of deeds, whether the mortgage
has been discharged, and if it has not, he is presumed to
know the law, and therefore has constructive notice, that
the mortgagee has now a right to commence his action
against the mortgager, or other tenant in possession, to obtain
a conditional judgment, and if the money is not paid, to have
a writ of possession, under which he may have his entry, to
foreclose.  The action is local, and must be brought in the
county where the land lies, the records of such court are
open to public inspection, and the long period of three years
is allowed, among other things, to afford an ample oppor-
tunity to all those who have collateral and derivative inter-
ests under the mortgager, to have actual notice of the exe-
cution of such judicial process, and to prevent the condition-
al estate from becoming absolute, by payment and redemp·
tion.

Some authorities were cited by the plaintiff to show that
a person cannot be bound by a judgment, to which he is not
a party ; but the rule does not apply to the case.  The
rights of a party may be incidentally and collaterally affected,
n various ways, by a judgment to which he is not party.
The judgment affects the subject matter in which he has
an interest, and to protect such interest he must take notice
of it at his peril.  Here the subject matter is, the lawful
possession of the mortgaged estate.  The judgment is the

means of obtaining such possession, and the statute works on this possession, and by lapse of time effects a foreclosure. The judgment therefore is but incidental. Let us, for illustration, take the case of a first and second mortgage in fee, the mortgager still holding a valuable equity of redemption, and remaining in possession. The first mortgagee, after condition broken, brings suit against the mortgager, has a conditional judgment, takes out his *habere facias*, and has possession under it three years without redemption. Can there be any doubt that the second mortgagee is barred, though no party to the judgment? Or can he be heard to say that he is not barred, because he had not actual notice of the writ or service of the writ of possession? I think not. It might not be strictly correct to say that he is personally bound by the judgment as a judgment; but his rights are affected by a proceeding, in which the subject matter, in which he claimed an interest, has been legally so disposed of and appropriated, that he can no longer assert his claim to it.

The case of *Taylor* v. *Porter*, 7 Mass. R. 355, was cited in the argument for the plaintiff, as analogous, not so much for the case decided as for the authority of the case there put, which is this; " If two distinct closes are included in the same mortgage, and the mortgager convey the closes in fee to different persons, by whom they are held in severalty, the mortgagee, to foreclose, must have two several writs of entry, &c." This is not the present case, because here the whole estate mortgaged was in one close. Perhaps, however, by parity of reasoning, if a mortgager, before entry or suit brought to obtain possession for condition broken, should in good faith convey his estate in fee to two or more persons, in distinct parcels, to hold in severalty, and they should respectively take open, visible, and notorious possession of the several parcels, the mortgagee might be under the necessity of suing several writs of entry against them, in order to make his mortgage effectual upon the whole estate. But were it so, the reason would be, not that other persons had taken deeds of the mortgager, or become tenants of the freehold, or otherwise interested in the estate, but because

they had come into the actual and open possession. But how does this rule apply to the present case ? It appears that before the commencement of the suit by Verry against Legg, the latter had given deeds of his whole estate. He had given the deed of the south half of the dam, the subject matter of this controversy, to Adams, and of the rest of the mortgaged premises to Asa Thayer, but remained in possession of the whole. In regard to the farm there is no controversy. In regard to the south half of the dam conveyed to Adams, the uncontradicted evidence is, that when Legg sold to Adams the fulling-mill, with the south half of the dam, on January 11, 1810, he, Legg, by agreement, was to remain in possession a certain length of time, and as the weight of the evidence is, one year, and he did so remain It is quite immaterial whether he paid rent for this period or not, or whether it was a part of the original agreement that he should have it one year without rent. The only material fact is, that he continued in the actual possession for that year. But long within that period, in May 1810, the suit was brought by Verry. The description of the land, in the writ, judgment and *habere facias*, follows precisely that of the mortgage deed, and extended to the thread of the river, so as definitely and clearly to embrace the land now in contro versy. The judgment and execution therefore, embraced the whole of the mortgaged premises, and the possession given by the officer was coextensive with the judgment, and therefore it appears, that Verry had an open and peaceable entry into and possession of the whole of the mortgaged premises, including the dam, and by continuing that possession by himself or his assigns for three years, the mortgage was effectually foreclosed.

There was some conflicting evidence upon the point of fact, whether Legg continued in possession till February 1812, when the writ of possession was executed. We have not thought it necessary to decide that question, though we think the evidence preponderates in favor of the affirmative. But we think it immaterial. It is in general true, that where an estate is conveyed as one parcel, is so described in the judgment and *habere facias*, delivery of possession, on any

part of the land in the name of the whole, gives legal possession of the whole. It may be the duty of an officer, where he finds distinct tenements and parcels of the land described in his writ, in the open and visible possession of persons not parties to the writ, as terre-tenants or otherwise, to enter upon such separate tenements and remove the occupants, or require them to attorn. But without relying upon the presumption, that an officer in this respect does his duty, and taking the fact as it probably was, that the officer entered upon part and delivered possession in the name of the whole, and did not enter upon the section of the dam in question, we are of opinion that this gave the mortgagee a good legal possession. Supposing that Legg did not continue in possession of the fulling-mill on the north side to a period so late as February 1812, neither Adams nor Craggin was in such open, visible, and actual possession of the south half of the dam as to render it necessary to make a separate entry upon them, as in case of a house, mill, or manufactory, actually occupied. Their possession, if they had any, was incident to a tenement on the opposite side of the river, and not embraced in the mortgage and writ of possession. It was a legal and constructive possession only, following their title; that title was derived out of a conveyance of a small part of the mortgaged premises, made after the mortgage, and which they could only take subject to the mortgage; and this possession must be considered to be determined by the legal possession given to the mortgagee under his judgment.

*Bill dismissed.*